**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ADMIRAL INSURANCE COMPANY, ) ) ) Plaintiff, ) ) v. ) ) STERLING ENGINEERING, INC., and ) ALEKSANDR TREYGER, ) ) Defendants. ) | Case No. 1:22-cv-572 |

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff, ADMIRAL INSURANCE COMPANY, by and through its attorneys, TRAUB LIEBERMAN STRAUS AND SHREWSBERRY, LLP, and for its Complaint for Declaratory Judgment against the Defendants, STERLING ENGINEERING, INC., and ALEKSANDR TREYGER, alleges the following:

### THE PARTIES

1. Plaintiff, ADMIRAL INSURANCE COMPANY ("ADMIRAL"), is a Delaware corporation with its principal place of business in Arizona.

2. Defendant, STERLING ENGINEERING, INC. ("STERLING"), is an Illinois corporation with its principal place of business in Illinois.

3. Upon information and belief, Defendant, ALEKSANDR TREYGER ("TREYGER"), resides in Monmouth County, New Jersey, and is therefore a citizen of New Jersey.

4. Jason Capozella ("Underlying Plaintiff"), resides in Suffolk County, New York, and is therefore a citizen of New York.

5. Underlying Plaintiff is the plaintiff in the lawsuit styled *Capozello v. Pescara Construction Corp., et al.* pending under index number 620569/2019 in the Supreme Court of Suffolk County, New York (the "Underlying Lawsuit"), for which coverage is sought from ADMIRAL by STERLING.

6. Underlying Plaintiff stipulated to be bound by all judgments entered by the Court in this action and, as such, is no longer named as a Defendant.

## JURISDICTION AND VENUE

7. Plaintiff brings this Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. § 2201.

8. There exists an actual and justiciable controversy among the parties concerning the rights, duties, and obligations of ADMIRAL under and pursuant to the policy of insurance described herein in connection with the Underlying Lawsuit.

9. The jurisdiction of this Court is premised upon 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the ADMIRAL on the one hand and STERLING and TREYGER on the other hand.

10. More specifically, ADMIRAL is an excess and surplus lines insurance company, and a wholly owned subsidiary of Berkley Insurance Company ("BIC").

11. ADMIRAL's statutory home office is in Delaware. ADMIRAL's main administrative office, mailing address, and primary location of books and records, are in Scottsdale, Arizona.

12. ADMIRAL's Chairman, Chief Executive Officer, Chief Financial Officer, General Counsel, Secretary, Treasurer, and/or other officers are located in Greenwich, Connecticut and

Scottsdale, Arizona. ADMIRAL's senior management meetings take place in Greenwich, Connecticut and Scottsdale, Arizona.

13. Admiral Insurance *Group* is a division of BIC headquartered in Mt. Laurel, New Jersey. BIC grants Admiral Insurance Group authority to conduct insurance activities and issue surplus lines policies on behalf of ADMIRAL using ADMIRAL's paper. The authority granted by BIC to Admiral Insurance Group includes, but is not limited to, issuing and managing insurance policies and settling claims on behalf of ADMIRAL.

14. The insurance policy at issue in this declaratory judgment action, No. EO000030269-05, is a surplus lines policy issued by ADMIRAL to STERLING ENGINEERING. Admiral Insurance Group did not issue the Admiral Policy.

15. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Specifically, this case relates to coverage sought from a professional liability insurance policy issued by ADMIRAL providing liability limits of $5 million subject to its terms, conditions, and exclusions. The Underlying Lawsuit seeks damages in excess of $75,000.

16. Venue is premised upon 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to this lawsuit occurred in this judicial district, because the insurance policy under which STERLING and TREYGER seek coverage was issued within this judicial district and is governed by the law of this judicial district.

**THE UNDERLYING LAWSUIT**

17. On October 16, 2019 Underlying Plaintiff initiated the Underlying Lawsuit by filing a Complaint (the "Underlying Lawsuit"). A true and correct copy of the Complaint in the Underlying Lawsuit is attached hereto as **Exhibit A**.

18. The Underlying Lawsuit names as defendants: (i) Pescara Construction Corp.; (ii) Pescara Contracting, Inc.; (iii) Pescara Masonry, Inc.; (iv) STERLING; and (v) TREYGER ("Underlying Defendants").

19. The Underlying Lawsuit alleges that on or around November 11, 2016, STERLING and TREYGER were general contractors of a construction project located at 26 Edison Street, Amityville, New York (the "Project").

20. The Underlying Lawsuit further alleges that STERLING and TREYGER operated, maintained, managed, controlled and supervised the Project.

21. The Underlying Lawsuit alleges that TREYGER was an agent, servant, and/or employee of STERLING.

22. The Underlying Lawsuit alleges that TREYGER supervised, managed, controlled, regulated, and directed the work being performed at the Project.

23. The Underlying Lawsuit alleges that STERLING and TREYGER entered into a contract with Installation, Inc. to perform certain work, labor and or services at the Project.

24. Pursuant to the Underlying Lawsuit, Underlying Plaintiff was an agent, servant and/or employee of Installation, Inc.

25. The Underlying Lawsuit alleges that Underlying Plaintiff was involved in an accident and injured in said accident at the Project location.

26. The Underlying Lawsuit asserts three causes of action against all Underlying Defendants.

27. The First Cause of Action alleges that Underlying Plaintiff's accident and injuries were caused by and due solely to the carelessness and negligence of the Underlying Defendants in

their ownership, management, operation, maintenance, control, supervision and/or inspection of worksite and/or construction site of the Project.

28. The First Cause of Action further alleges that the Underlying Defendants were negligent, reckless and careless in violating the non-delegable duty to provide safety devices and applicable safeguards at the Project.

29. The First Cause of Action further alleges that Underlying Defendants were careless and negligent in their failure to properly supervise the premises, the work being performed, and the workers, employees, agents and/or servants performing said work.

30. The Second Cause of Action alleges that Underlying Defendants failed to provide Underlying Plaintiff with a safe place to work, proper safety devices, and proper equipment in violation of New York State Labor Laws, Industry Codes, and Occupational Safety and Health Act laws.

31. The Third Cause of action alleges that Underlying Defendants were negligent in their recruitment, hiring, retaining, supervising and training of their agents, servants and/or employees, staff and personnel.

32. The Underlying Lawsuit seeks relief for each cause of action by a judgment against the Underlying Defendants in excess of the monetary jurisdictional limits of lower New York State Courts for each cause of action.

**THE INSURANCE POLICY**

33. ADMIRAL issued a policy of professional liability insurance to STERLING as the Named Insured, bearing policy no. EO000030269-05, effective from September 21, 2019 to March 1, 2021, providing liability limits of $5 million per claim and in the aggregate subject to its terms,

conditions, and exclusions, including a $25,000 per claim deductible (the "Admiral Policy"). A true and correct copy of the Admiral Policy is attached hereto as **Exhibit B**.

34. The Admiral Policy provides claims-made and reported coverage for Architects and Engineers Professional Liability pursuant to the following Insuring Agreement:

> We will pay on behalf of the **Insured** those amounts, subject to the Limits of Liability and deductible stated in the Declarations, that the **Insured** is legally obligated to pay as **damages** resulting from a **claim** first made against the **Insured** during the **policy period** and reported to us in writing during the **policy period**, or any applicable extended reporting period as described in Section **VII.** EXTENDED REPORTING PERIOD provided that:
>
> 1. The **claim** results from a **professional incident** or a **pollution incident** that takes place in the Policy Territory; and
> 2. the **claim** results from a **professional incident** or **pollution incident** that takes place subsequent to the retroactive date and prior to the expiration or termination date of this policy; and
> 3. prior to the inception date of this policy stated in the Declarations, no **Insured** knew or could have reasonably foreseen or expected that the **professional incident** or **pollution incident** or circumstance might give rise to a **claim**.

35. The Admiral Policy affords coverage for "claims" made against "insureds." Section II (Definitions) of the Admiral Policy defines the term "claim" and the related term "suit" as follows:

> **E.** **Claim** means:
>
> 1. a written demand received for money or services, received by any **Insured**, resulting from a **professional incident, pollution incident, network security and privacy wrongful act** or **media wrongful at.**
> 2. service of **suit** against an **Insured.** […]
>
> \* \* \*
>
> **JJ.** **Suit** means a civil proceeding in which **damages** resulting from a **professional incident, pollution incident, network security and privacy wrongful act** or **media wrongful act** are alleged. **Suit** includes an arbitration proceeding to which the **Insured** is required to submit or to which the **Insured** has submitted with our written consent.

36. The Insuring Agreement is satisfied by "claims" resulting from a "professional incident." When a "claim" takes the form of service of a "suit," the "suit" must allege "damages" resulting from a "professional incident" to satisfy the Insuring Agreement. Section II (Definitions) of the Admiral Policy defines the term "professional incident" and the bolded terms used within the term "professional incident" to mean the following:

> V. **Personal Injury** means injury arising out of one or more of the following offenses:
>
>> 1. false arrest, detention or imprisonment;
>> 2. malicious prosecution;
>> 3. wrongful entry or wrongful eviction;
>> 4. invasion of right of private occupancy;
>> 5. oral or written publication of material that slanders or libels a person or organization or defames or disparages a person's or organization's goods, products or services;
>> 6. oral or written publication of material that violates a person's right of privacy.
>
> * * *
>
> CC. **Professional Incident** means:
>
>> 1. **personal injury** committed by the **Insured** in the rendering of or failure to render **professional services** by the **Insured** or a person acting under the **Insured's** direction, control or supervision and for whose acts, errors or omissions the **Insured** is legally liable; or
>> 2. a negligent act, error or omission in the rendering of or failure to render **professional services** by the **Insured** or a person acting under the **Insured's** direct, control or supervision and for whose acts, errors or omissions the **Insured** is legally liable; or
>
>> All **professional incidents** which are logically or causally connected will be deemed one **professional incident** that for the purpose of determining coverage under this policy, shall be deemed to have occurred at the time of the earliest logically or causally connected act, error or omission.
>
> DD[1]. **Professional Services** means:

---

[1] This definition of "Professional Services" reflects the definition as amended by endorsement to the Admiral Policy (EO 13 49 01 19).

      **a.**      Services, performed by an **Insured** for others involving specialized training, knowledge and skill while in the pursuit of the business stated in the Declarations.

      **b.**      **Technology Services.**

* * *

**LL.**[2]    **Technology Services** means:

    a.    Software development, design, distribution, sale and licensing including via ASP and SaaS delivery model by the **Insured** for a fee;

    b.    Computer or telecommunications hardware, software, firmware, equipment or devices designed or specifically intended for use in conjunction with the **Insured's Professional Services** that was designed, sold, distributed, licensed or leased by the **Insured** to others;

    c.    Electronic, computer or communications network analysis audit, design and integration;

    d.    User and Network support and training;

    e.    Web, data, software and network hosting and administration;

    f.    Website and web content design;

    g.    Data processing, entry, conversion or programming;

    h.    Value added hardware and software resale, licensing or leasing.

## COUNT I – DECLARATORY JUDGMENT
## NO DUTY TO DEFEND STERLING OR TREYGER

37.    Plaintiff adopts and realleges the allegations of Paragraphs 1 through 36 above as and for Paragraph 37 of Count I, as if fully set forth herein.

38.    The Insuring Agreement of the Admiral Policy is satisfied by "claims" resulting from a "professional incident." When a "claim" takes the form of service of a "suit," the "suit" must allege "damages" resulting from a "professional incident" to satisfy the Insuring Agreement.

39.    A "professional incident" means "personal injury" committed by STERLING or TREYGER in the rendering of or failure to render professional services.

---

[2] This definition of "Technology Services" reflects the definition added by endorsement to the Admiral Policy (EO 13 49 01 19).

40. The Underlying Lawsuit does not result from or allege damages resulting from "personal injury" as that term is defined by the Admiral Policy.

41. A "professional incident" also means a negligent act, error or omission in the rendering of or failure to render "professional services" by STERLING, TREYGER, or a person acting under STERLING's direction, control or supervision.

42. "Professional services" is defined, in part, to mean "technology services."

43. The Underlying Lawsuit does not result from or allege damages resulting from a negligent act, error, or omission in the rendering of or failure to render "technology services" as that term is defined by the Admiral Policy.

44. A "professional services" is also a service performed by STERLING or TREYGER for others involving specialized training, knowledge and skill while in the pursuit of the business stated in the Declarations. The Declarations page of the Admiral Policy identifies STERLING's Business Description as "Mechanical and process engineering."

45. In order to implicate the Insuring Agreement of the Admiral Policy, the Underlying Lawsuit (a "claim") must result from an act or omission in STERLING's or TREYGER's rendering of or failure to render a service involving specialized training, knowledge and skill while in the pursuit of mechanical or process engineering.

46. In order to implicate the Insuring Agreement of the Admiral Policy, the Underlying Lawsuit (a "suit") must allege "damages" resulting from STERLING's or TREYGER's rendering of or failure to render a service involving specialized training, knowledge and skill while in the pursuit of mechanical or process engineering.

47. The Underlying Lawsuit alleges that STERLING and TREYGER were general contractors for the Project.

48. The Underlying Plaintiff suffered bodily injury due to the alleged negligence of STERLING and TREYGER in the ownership, management, operation, maintenance, control, supervision, and/or inspection of the Project.

49. The Underlying Lawsuit further alleges that Plaintiff's injuries were due to the alleged negligence of STERLING and TREYGER in failing to provide a safe workplace and failing to adequately hire, train, and supervise employees on the Project.

50. The allegations of the Underlying Lawsuit do not implicate the definition of "professional incident," as the Underlying Plaintiff does not allege that STERLING or TREYGER committed a negligent act, error, or omission in the rendering of or failure to render a service involving specialized training, knowledge and skill while in the pursuit of mechanical or process engineering.

51. The Insuring Agreement of the Admiral Policy is not satisfied the Underlying Lawsuit is not a "claim" resulting from a "professional incident."

52. The Insuring Agreement of the Admiral Policy is not satisfied because the Underlying Lawsuit does not allege "damages" resulting from a "professional incident."

53. ADMIRAL owes no coverage obligations, including a duty to defend, to STERLING or to TREYGER, because the Underlying Lawsuit does not satisfy the Insuring Agreement of the Admiral Policy.

54. An actual and justiciable controversy exists between ADMIRAL, STERLING, and TREYGER, such that a declaratory judgment is necessary to determine the rights and obligations of ADMIRAL, STERLING, and TREYGER under the Admiral policy.

WHEREFORE, ADMIRAL INSURANCE COMPANY prays that this Honorable Court declare and adjudicate the rights and liabilities of the parties regarding the Admiral Policy, together with the following relief:

A. That this Court find and declare that the Insuring Agreement of the Admiral Policy is not satisfied by the allegations of the Underlying Lawsuit;

B. That this Court find and declare that ADMIRAL owes no duty to defend STERLING or TREYGER in connection with the Underlying Lawsuit under the Admiral Policy;

C. That this Court find and declare that ADMIRAL may withdraw from the defense of STERLING and TREYGER in the Underlying Lawsuit immediately, owing no defense obligation to STERLING or TREYGER under the Admiral Policy; and

D. That this Court grant such other and further relief as it deems just and equitable.

**COUNT II – DECLARATORY JUDGMENT**
**NO DUTY TO INDEMNIFY STERLING OR TREYGER**

55. Plaintiff adopts and realleges the allegations of Paragraphs 1 through 54 above as and for Paragraph 55 of Count II, as if fully set forth herein.

56. Because ADMIRAL does not owe a duty to defend STERLING or TREYGER in the Underlying Lawsuit, ADMIRAL does not owe a duty to indemnify STERLING or TREYGER in the Underlying Lawsuit.

WHEREFORE, ADMIRAL INSURANCE COMPANY prays that this Honorable Court declare and adjudicate the rights and liabilities of the parties regarding the Admiral Policy, together with the following relief:

A. That this Court find and declare that the Insuring Agreement of the Admiral Policy is not satisfied by the allegations of the Underlying Lawsuit;

B. That this Court find and declare that ADMIRAL owes no duty to indemnify STERLING or TREYGER in connection with the Underlying Lawsuit under the Admiral Policy;

    C.    That this Court grant such other and further relief as it deems just and equitable.

Dated: April 6, 2022

    Respectfully submitted,

    **TRAUB LIEBERMAN STRAUS SHREWSBERRY, LLP**

    /s/ Jeremy S. Macklin
    One of the Attorneys for Plaintiff
    *Admiral Insurance Company*

Jeremy S. Macklin (6303870)
Natasha M. Seaton (6336732)
**TRAUB LIEBERMAN**
**STRAUS & SHREWSBERRY LLP**
303 W. Madison, Ste. 1200
Chicago, Illinois 60606
Telephone: (312) 332-3900
Facsimile: (312) 332-2908
jmacklin@tlsslaw.com
nseaton@tlsslaw.com

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that the foregoing document was filed on April 6, 2022, with the Clerk of the Court using the CM/ECF System, which will send electronic notification of such filing to all counsel on record.

    /s/ Jeremy S. Macklin
    One of the Attorneys for Plaintiff
    *Admiral Insurance Company*

Jeremy S. Macklin (6303870)
Natasha M. Seaton (6336732)
**TRAUB LIEBERMAN**
**STRAUS & SHREWSBERRY LLP**
303 W. Madison, Ste. 1200
Chicago, Illinois 60606
Telephone: (312) 332-3900
Facsimile: (312) 332-2908
jmacklin@tlsslaw.com
nseaton@tlsslaw.com